## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ERIC ORLANDO FOWLER,

     Petitioner,

v.                                    Case No. 8:20-cv-2932-CEH-TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

## ORDER

     Eric Orlando Fowler, a Florida prisoner, timely filed a *pro se* amended petition for writ of habeas corpus under 28 U.S.C. § 2254. (Docs. 15, 16.) Respondent opposes the amended petition. (Doc. 44.) Fowler did not file a reply. Upon consideration, the amended petition will be denied.

## BACKGROUND

     A state court jury convicted Fowler of two counts of sexual battery. (Doc. 45-2, Ex. 2, pp. 603-04.) The state trial court sentenced him to concurrent terms of 20 years in prison and designated him a sexual predator. (*Id.*, pp. 639-47.) The state appellate court *per curiam* affirmed the convictions and sentences. (Doc. 45-3, Ex. 9.)  The state appellate court also denied Fowler's petitions for writ of habeas corpus. (Doc. 45-4, Exs. 28, 29, 31, 32, 37, 38.) Fowler's motion for postconviction relief, filed under Florida Rule of Criminal Procedure 3.850, was denied. (*Id.*, Ex. 39.) The state appellate court *per curiam* affirmed the denial of relief. (*Id.*, Ex. 41.)

1

Fowler was represented by numerous attorneys in state court; he also represented himself at times, including at trial. Fowler was charged on May 15, 2018. (Doc. 45-2, Ex. 2, p. 39.) He was represented by the Office of the Public Defender from June 19, 2018, to September 12, 2018. (*Id.*, pp. 119, 254.) The Office of Regional Counsel represented Fowler from October 16, 2018, to January 7, 2019. (*Id.*, pp. 314, 371.) A court-appointed attorney, Daniel M. Hernandez, began representing Fowler on January 7, 2019. (*Id.*, p. 371.) At trial, Fowler proceed *pro se* and Hernandez was designated as standby counsel. (*Id.*, p. 433.)

## FACTS[1]

The victim, a 16-year-old girl, lived with her parents, Fowler, and several other people in a New Port Richey, Florida, home. Her parents were separated and had different bedrooms. On the night of March 16, 2018, the victim was sitting on a chair in her mother's bedroom watching videos when Fowler came into the room. Fowler asked the victim to kiss him. She refused and moved onto the bed. There, Fowler pulled her pants down, touched her vagina with his mouth, and digitally penetrated her vagina. Fowler forced the victim to touch his penis. Fowler ignored the victim when she told him to stop. The next day, Fowler asked her if she liked what he did and gave her $200.00.

The victim told her mother what happened sometime later. The victim then told her father about the incident on April 1, 2018, and her father called the police. Sergeant

---

[1] The factual summary is based on the trial transcript.

Mark Gutierrez talked to the victim. The victim was reluctant to discuss details, but stated that Fowler said that he would deny the allegations if she told anyone, and that she did not initially tell anyone what happened because she was scared of getting in trouble. Sergeant Gutierrez interviewed Fowler on April 10, 2018. The interview ended when Fowler said he wanted to stop talking. Child protection specialist Michelle Orr interviewed the victim on April 11, 2018. The victim told Orr about the incident. The victim told Orr she did not want to testify in court. The victim also told Orr that Fowler said he would deny what happened, and that Fowler gave her money to buy a hoverboard. At trial, the victim testified that she would rather not be there.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
> A decision is "contrary to" clearly established federal law "if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question

of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the convictions and sentence, as well as the denial of postconviction relief, without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that

does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

## EXHAUSTION OF STATE REMEDIES; PROCEDURAL DEFAULT

A federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in his petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

A petitioner shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a

constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

## INEFFECTIVE ASSISTANCE OF COUNSEL

Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Fowler must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Fowler must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland* . . . ." *Tuomi v. Sec'y, Fla. Dep't of Corr.*, 980 F.3d 787, 795 (11th Cir. 2020). Appellate counsel's performance "will be deemed prejudicial if . . . the neglected claim would have a

6

reasonable probability of success on appeal." *Id.* (internal quotation marks and citation omitted).

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## DISCUSSION

### Ground One-A

Fowler contends that Detective Gutierrez violated his rights to counsel and to remain silent by talking to him about the sexual battery allegations without his appointed attorney. Fowler states that he was arrested on April 1, 2018, on three misdemeanor warrants from "prior cases." (Doc. 15, p. 5.) He asserts that a rights invocation form he signed at that time "was still active" when Detective Gutierrez later interviewed him about the sexual battery allegations. (*Id.*)[2] In stating that the

---

[2] Fowler's petition does not allege how much time passed before Sergeant Gutierrez interviewed him about the sexual battery allegations. As addressed, Sergeant Gutierrez testified at trial that he interviewed Fowler on April 10, 2018. (Doc. 45-3, Ex. 4, p. 403.)

interview occurred without his attorney, Fowler appears to refer to the attorney appointed to represent him on his earlier misdemeanor cases.

Fowler does not clearly assert that the alleged deficiencies in the interview violated his federal rights. Accordingly, this claim is not cognizable on federal habeas review. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief." (citing *Carrizales v. Wainwright*, 699 F.2d 1053, 1054-55 (11th Cir. 1983))).

Even construing Fowler's claim as alleging a Fifth Amendment violation, he is not entitled to relief. As Respondent notes, Fowler did not exhaust the claim on direct appeal. (Doc. 45-3, Exs. 7, 8.) But in his postconviction motion, Fowler raised similar factual allegations in arguing that trial counsel was ineffective for failing to investigate constitutional violations in obtaining his statement. (Doc. 45-4, Ex. 39, pp. 29-30.) And Fowler titles Ground One of his § 2254 petition "ineffective assistance of counsel." (Doc. 15, p. 5.) Even assuming that Fowler intends to raise the same ineffective assistance of counsel claim he brought in state court, however, he fails to show entitlement to relief. Further, notwithstanding the failure to exhaust the related Fifth Amendment claim, that claim lacks merit.

The state court denied Fowler's claim that counsel was ineffective for not investigating a constitutional violation due to his being questioned without his attorney. First, the state court concluded that Fowler could not prevail on a claim alleging ineffective assistance of his standby counsel because a criminal defendant has no constitutional right to partial representation by standby counsel. (Doc. 45-4, Ex.

8

39, pp. 117-18.) In addition, the state court determined that even if Fowler could bring this claim against standby counsel, Fowler failed to establish that he was prejudiced by counsel's performance. (*Id.*, p. 118.)

The state court's ruling was reasonable. There is no constitutional right to standby counsel. *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) (stating that a court is not required "to permit 'hybrid' representation"); *Behr v. Bell*, 665 So.2d 1055, 1056-57 (Fla. 1996) (holding that "a defendant who represents himself has the entire responsibility for his own defense, even if he has standby counsel. Such a defendant cannot thereafter complain that the quality of his defense was a denial of 'effective assistance of counsel.'" (quoting *Faretta v. California*, 422 U.S. 806, 835 n.46 (1975))). Thus, Fowler cannot show that his standby counsel's alleged ineffectiveness resulted in a violation of his federal constitutional right to effective counsel.

Further, Fowler has not established a viable underlying claim about the constitutionality of his interview with Sergeant Gutierrez. The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend V. This protection against self-incrimination is the basis of an individual's right to an attorney during custodial interrogation. *See McNeil v. Wisconsin*, 501 U.S. 171, 176 (1971) (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)). Although the Fifth Amendment right to counsel is not offense-specific, it can "be invoked only during custodial interrogation or when interrogation is imminent." *United States v. Grimes*, 142 F.3d 1342, 1348 (11th Cir. 1998). And "[t]he fact that an accused is represented by counsel on an unrelated matter does not automatically give

9

rise to an assumption that the accused is asserting the right to counsel in regard to all police questioning." *Gore v. Sec'y, Dep't of Corr.*, 492 F.3d 1273, 1301 (11th Cir. 2007) (citing *McNeil*, 501 U.S. at 177-82). "Thus, if an accused is properly advised of the right to counsel under *Miranda* and non-coercively, knowingly and intelligently waives that right, representation by counsel on an unrelated matter will not taint that waiver and the statements are admissible." *Gore*, 492 F.3d at 1301.

Fowler does not establish that custodial interrogation on the sexual battery allegations was imminent when he invoked his rights regarding the unrelated misdemeanor charges. Nor does he challenge Detective Gutierrez's trial testimony that Detective Gutierrez informed Fowler of his *Miranda* rights, that Fowler agreed to talk to him, and that the interview concluded when Fowler stated that he did not want to talk further. (Doc. 45-3, Ex. 4, pp. 403-06.) Fowler has not shown a violation of his Fifth Amendment rights, or that counsel was ineffective for not investigating or presenting a meritless argument about any such violation.[3] *See Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."). Fowler is not entitled to relief on Ground One-A.

---

[3] The state court's order focused on standby counsel's performance. To the extent Fowler intends to raise this same claim against any other counsel who represented him in the case, the claim fails because Fowler's underlying claim about the constitutionality of the police interview lacks merit.

**Ground One-B**

Fowler asserts that the Public Defender was ineffective for not seeking or obtaining copies of discovery. He states that his appointed counsel "did nothing to ensure" that he was provided a copy of discovery. (Doc. 15, p. 6.) Fowler states that he had not received discovery as of April 29, 2019, when his trial was originally scheduled.

Fowler raised a similar claim on direct appeal, asserting that his court-appointed attorneys did not request discovery. (Doc. 45-3, Ex. 8, pp. 8-9.) The state appellate court rejected his claim without discussion. (Doc. 45-3, Ex. 9.) An ineffective assistance of trial counsel claim is usually not cognizable on direct appeal. *See Steiger v. State*, 328 So.3d 926, 929 (Fla. 2021) (stating that "[u]npreserved claims of ineffective assistance of counsel cannot be raised or result in reversal on direct appeal" absent a showing of fundamental error).

Even assuming that the state appellate court denied Fowler's claim on the merits, Fowler has not shown that the state court's decision was unreasonable. Fowler's attorney from the Office of the Public Defender filed a demand for discovery under Florida Rule of Criminal Procedure 3.220(a) on June 19, 2018, the same day that Office was appointed. (Doc. 45-2, Ex. 2, p. 120.) The State answered the demand for discovery. (*Id.*, p. 115; Ex. 3, p. 828.) When Attorney Hernandez was appointed, he filed a demand for discovery. (Doc. 45-2, Ex. 2, pp. 392-93.) But shortly afterward, Fowler decided to proceed *pro se*, resulting in Attorney Hernandez's not receiving

discovery. (Doc. 45-2, Ex. 2, pp. 403-04; Ex. 3, pp. 761, 816-17.) Fowler has not established that counsel was ineffective for not requesting or obtaining discovery.

Nor does Fowler show that he was prejudiced by his attorneys' alleged failure to provide him with copies of discovery. When Fowler told the trial court shortly before trial that he had not received discovery, the trial court had the State provide Fowler another copy of discovery. (Doc. 45-2, Ex. 3, pp. 855-56, 862, 873.) The trial court found that there was no discovery violation, and that even if there was, it was inadvert and the State cured it by providing him a copy of discovery. (*Id.*, p. 861.) Further, the Court granted Fowler's motion for a continuance. (*Id.*, pp. 873-76.) Fowler does not explain how an earlier receipt of discovery from his appointed attorneys would have affected his defense such that there is a reasonable probability the outcome of trial would have been different.

Accordingly, Fowler has not shown that the state appellate court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. He is not entitled to relief on Ground One-B.

**Ground One-C**

Fowler asserts that his standby counsel was ineffective because he was not present during the trial. The state court denied Fowler's claim:

> Defendant once again alleges that *stand-by counsel*, of whom Defendant *repeated[ly] and consistently* denied appointment, failed to effectively assist him during trial. Defendant once again remonstrates at length about the failure of stand-by counsel to perform duties of aid; in this claim, for failure to be present for trial. Defendant also alleges that the Court coerced Defendant to move forward on his own because stand-by counsel, who had previously been present in Court and therefore would

have some knowledge of the case, was not available on the day of trial and while Defendant could be appointed counsel that person "would have virtually no knowledge of the case."

[ ] Defendant is not and was not entitled to hybrid representation. *Logan v. State*, 846 So.2d 472, 474-75 (Fla. 2003). Defendant was advised repeatedly of the dangers of self-representation. Defendant consistently refused. Furthermore, Defendant's claim that the Court coerced him into proceeding is not cognizable in a motion for postconviction relief, and refuted by the record regardless. *See* . . . Exhibit: E P 17, Line 18 – P 18, Line 9 ("Okay. And we talked about standby counsel. You had standby counsel. He is not available for today because he has another trial in another jurisdiction. It's not required that you have standby counsel, and so I talked to you about that. You could get a continuance so that your standby counsel could be present. We had an original trial date that was set that was approved through his calendar, but when we moved it up because I took your request . . . to continue with your speedy trial right, he was not available. And you said that was fine. And so you still stand by that?" "Yes.").

(Doc. 45-4, Ex. 39, p. 119) (some state court record citations omitted).

Fowler is not entitled to relief. As addressed, there is no constitutional right to standby counsel. *See McKaskle*, 465 U.S. at 183; *Behr*, 665 So.2d at 1056-57. Thus, Fowler cannot show that his standby counsel's absence caused a violation of his federal constitutional right to effective counsel. Furthermore, as addressed in the state court's order, Fowler knew that standby counsel was not available on the date his trial could be scheduled to his satisfaction, and decided to proceed without standby counsel. (Doc. 45-2, Ex. 3, pp. 915-918; Doc. 45-3, Ex. 4, pp. 17-18, 291-92.) Under these circumstances, Fowler has not shown that the state court's denial of his claim was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable factual determination. He is not entitled to relief on Ground One-C.

**Ground One-D**

Fowler asserts that his appointed attorney from Regional Counsel's Office was ineffective regarding an insanity defense when, he asserts, the state trial court forced him to "prove insanity" in December 2018. (Doc. 15, p. 7.) Respondent correctly contends that this claim is unexhausted because Fowler did not raise the issue in his postconviction motion. (Doc. 45-4, Ex. 39, pp. 27-43.) Fowler cannot return to state court to raise this claim in an untimely, successive postconviction motion. *See* Fla. R. Crim. P. 3.850(b), (h). Fowler does not establish that an exception applies to excuse the resulting procedural default. *See Smith*, 256 F.3d at 1138.

Further, the record does not support Fowler's claim. After a competency evaluation, the state trial court adjudicated Fowler competent to proceed. (Doc. 45-2, Ex. 2, pp. 336-41; Ex. 3, pp. 781-82.) But a potential insanity defense was not addressed. (*Id.*) Fowler does not argue or demonstrate that counsel was ineffective in connection with the competency proceedings. Accordingly, Fowler is not entitled to relief on Ground One-D.

**Ground One-E**

Fowler argues that appellate counsel was ineffective for filing an *Anders*[4] brief without requesting a transcript of an April 12, 2019, pre-trial hearing. Fowler asserts that the state trial court denied several of his motions at that hearing.

---

[4] In *Anders v. California*, 386 U.S. 738, 744 (1967), the Supreme Court addressed applicable procedures when appellate counsel finds the appeal to be wholly frivolous, including appellate counsel's filing of a brief "referring to anything in the record that might arguably support the appeal."

The record supports Respondent's assertion that this claim is unexhausted because Fowler did not raise it in state court. A claim of ineffective assistance of appellate counsel is properly raised in a petition under Florida Rule of Appellate Procedure 9.141(d). Fowler did not file such a petition alleging ineffective assistance of appellate counsel.[5] Because Fowler cannot return to state court to file an untimely petition, the claim is procedurally defaulted. *See* Fla. R. App. P. 9.141(d)(5). Fowler has not argued or established that an exception applies to excuse the default. *See Smith*, 256 F.3d at 1138.

Alternatively, Fowler does not establish entitlement to relief. Fowler does not explain how the transcript would have led appellate counsel to a claim with a reasonable probability of success on appeal. *See Tuomi*, 980 F.3d at 795. Fowler's conclusory assertion that counsel should have used the transcript in preparing and filing an appellate brief does not establish that counsel was ineffective. *See, e.g.*, *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001) ("A petitioner has the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation."); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a petitioner's "unsupported allegations" that are "conclusory in nature

---

[5] Fowler filed a motion alleging ineffective assistance of appellate counsel in his direct appeal proceeding. (Doc. 45-3, Ex. 5, p. 3.) The state appellate court denied his motion without prejudice to Fowler's filing a petition under Rule 9.141(d) after his direct appeal concluded. (*Id.*) But Fowler did not do so.

and lacking factual substantiation" cannot sustain an ineffective assistance claim). Fowler is not entitled to relief on Ground One-E.

**Ground Two**

Fowler argues that the State failed to timely provide him with discovery. He also asserts that the state trial court erred in failing to conduct a *Richardson*[6] hearing about the alleged discovery violation and in providing him inadequate time to prepare for trial after the belated disclosure of discovery.

Fowler's claims are not cognizable under § 2254 because he alleges no federal constitutional violation. *See Branan*, 861 F.2d at 1508. Rather, his claim involves state law questions. Whether the prosecution complied with state rules about discovery and whether the state trial court should have further examined the alleged violation of these state rules are issues of Florida law. There is "no general constitutional right to discovery in a criminal case . . . ." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) (quoting *Wardius v. Oregon*, 412 U.S. 470, 474 (1973)). And Fowler has not demonstrated how the allegedly delayed receipt of discovery otherwise caused a violation of his federal rights. Ground Two warrants no relief.

**Ground Three**

Fowler contends that he was subject to an unlawful detention and search. As he did in Ground One-A, he states that he was initially detained pursuant to "3

---

[6] Under *Richardson v. State*, a Florida trial court should hold a hearing to determine if the State violated Florida's discovery rules and whether any violation prejudiced the defendant's ability to prepare for trial. 246 So.2d 771, 775 (Fla. 1971).

16

misdemeanor warrants not related to this case." (Doc. 15, p. 11.) Fowler asserts that he was unlawfully interrogated and arrested in this case without probable cause, and that the Pasco County Sheriff's Office filed a complaint despite "the paucity of any ongoing investigations." (*Id.*) He asserts that his conviction "was based on an illegal detention of a person." (*Id.*)

Fowler raised this claim on direct appeal. (Doc. 45-3, Ex. 8.) He does not show that the state appellate court's silent rejection of his claim was unreasonable. Initially, to the extent that Fowler reiterates the arguments raised in Ground One-A, his claim does not warrant relief for the same reasons addressed above. Nor does Fowler establish any other basis for federal habeas relief. He has not shown that the alleged unlawful acts in his interrogation and detention, or the filing of a police complaint, affected the validity of his conviction. *See, e.g., Myers v. Rhay*, 577 F. 2d 504, 507 (9th Cir. 1978) ("It is well settled that illegal arrest or detention of a suspect does not void a subsequent conviction." (citing *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975))). And "police generally can interview prisoners even without probably cause to hold them. This means that police can interrogate suspects with little or no evidence of guilt . . . ." *Maryland v. Shatzer*, 559 U.S. 98, 127-28 n.13 (2010) (Stevens, J., concurring).

In addition, before a petitioner can obtain relief, he must show that an allegedly false statement made in obtaining a warrant was made "knowingly and intentionally, or with reckless disregard for the truth . . . ." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). To the extent Fowler may assert that a police complaint or affidavit in support of a warrant may have included false statements, he has not offered any evidence or

argument to show that such statements rose to this level. Fowler has not established that his custody violates the Constitution, laws, or treaties of the United States on the bases alleged. Ground Three does not warrant relief.

**Ground Four-A**

Fowler appears to assert that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963)[7] by failing to disclose impeachment evidence. He appears to contend that the prosecution did not inform him that the State paid lodging and travel expenses for the victim and her father, thereby raising questions about their credibility.

In his postconviction motion, Fowler addressed *Brady* by alleging ineffective assistance of standby counsel for failing to obtain *Brady* material—a distinct claim from the prosecutorial misconduct claim he brings in the § 2254 petition. But even assuming that Fowler's underlying *Brady* claim is exhausted to the extent the state court considered its merits in deciding his ineffective assistance claim, Fowler is not entitled to relief. The state court found no *Brady* violation:

> Defendant alleges that counsel should have discovered the *Brady* material, however, Defendant goes on to claim that "no records exist," apart, he seems to claim, from prosecutor work product.
> . . .
>
> Although a *Brady* obligation exists even where material may be work product, receipts showing whether witnesses were provided lodgings in order to testify are not exculpatory nor would such information

---

[7] Fowler cites *Giglio v. United States*, 405 U.S. 150 (1972), but it appears he intended to refer to *Brady*. To the extent Fowler raises a *Giglio* claim, he is not entitled to relief because he has not identified any allegedly false testimony or shown that the State knowingly presented such testimony or failed to correct it. *See Giglio*, 405 U.S. at 153-54 (holding that the prosecution violates a criminal defendant's due process rights by presenting evidence known to be false).

undermine the confidence in the outcome of the case. *See Young v. State*, 739 So.2d 553, 559 (Fla. 1999) (explaining that the ultimate test in postconviction *Brady* analysis is whether the State possessed and did not disclose information that was of such nature and weight that confidence in the outcome of the trial is undermined, to the extent that a *reasonable probability* exists that, had the information been disclosed to a defendant, the outcome of trial would have been different); *see also Jennings v. State*, 782 So.2d 853 (Fla. 2001).

There is no reasonable probability as to a different outcome as to [the victim's father] because this witness did not even testify. And at the time of trial, Defendant himself wanted to call [the victim's father] but failed to issue a subpoena or make arrangements for him to appear. It is unclear how the State incentivized this witness to favorably testify by arranging lodgings or payments if the witness did not actually testify. And as was explained to Defendant *during trial*, [the victim's father] had no independent recollection of events and much of his testimony would have been hearsay or cumulative. Instead, the Court allowed a stipulation of fact as to his testimony as Defendant agreed would be relevant.

As for . . . the victim, witnesses called by the State are *entitled* to have their expenses covered and certain reimbursements for their time. Fla. Stat. § 92.142.

(Doc. 45-4, Ex. 39, p. 120) (state court's record citations omitted).

Fowler does not show entitlement to relief. To establish a *Brady* violation, a petitioner must show that "(1) the evidence at issue is favorable to [him], either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) [he] incurred prejudice." *Wright v. Sec'y, Fla. Dep't of Corr.*, 761 F.3d 1256, 1278 (11th Cir. 2014). The prejudice prong, "also referred to as the 'materiality prong,' is met when 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)).

19

Fowler presents no evidence substantiating his claim that the State paid for housing and transportation for the victim and her father. Further, the state court did not unreasonably conclude that Fowler failed to show how such information would be material regarding the victim's father. The victim's father did not testify; rather, the parties agreed to a stipulation about his involvement. (Doc. 45-3, Ex. 4, pp. 478-79.) The stipulation, as read to the jury, stated that the victim's father "was at home on the night of March 16th, 2018. On the night of March 16th, 2018, [the victim] did not awaken him or tell him anything about the allegations against Eric Fowler, and he was told by [the victim] about the allegations against Eric Fowler on April 1st, 2018, and then called the police." (*Id.*, p. 496.)

Similarly, the state court did not unreasonably find that Fowler failed to show a *Brady* violation regarding the victim. Under Florida law, as the state court pointed out, witnesses may be entitled to expenses. *See* § 92.142, Fla. Stat. (providing for certain expenses for witnesses in all cases). Additionally, Fowler only speculates that any such expenses influenced the victim's testimony. The victim told her parents, law enforcement, and the child protection specialist about the incident several weeks after it happened—before, it appears, the State would have provided her with any expenses for travel and lodging. Although there was some indication that the victim was reluctant to discuss the events or come to court, Fowler has provided no evidence that these alleged payments affected her willingness to testify or the content of her testimony. Indeed, the victim's trial testimony was consistent with what Michelle Orr,

the child protection specialist, said the victim told her during their April 11, 2018, interview. (Doc. 45-3, Ex. 4, pp. 340-54, 421-27.)

Fowler's assertion that the State failed to disclose that it paid for travel and lodging during the trial for the victim and her father, without more, is insufficient to show a reasonable probability that the allegedly undisclosed information was material. Thus, Fowler does not establish a *Brady* violation. Having failed to show that the state court unreasonably applied *Brady* or unreasonably determined the facts in denying his claim, Fowler is not entitled to relief on Ground Four-A.

**Grounds Four-B and Eight**[8]

Fowler contends that the state trial court violated his right to confrontation and his right to compulsory process by preventing him from calling the victim's father to testify. Fowler concedes that he did not raise this claim on direct appeal. He states that he did not do so because he could not address it until after conducting further research. (Doc. 15, p. 13; Doc. 16, p. 6.) Fowler cannot return to state court to raise the claim in an untimely, successive direct appeal. *See* Fla. R. App. P. 9.140(b)(3) (stating that an appeal must be taken within 30 days of the rendition of sentence). Fowler does not show that an exception applies to excuse the resulting procedural default. *See Smith*, 256 F.3d at 1138. He has not established that his lack of knowledge about a claim that existed when he appealed was due to any "objective factor external to the defense

_____

[8] Fowler's amended petition contains seven grounds. (Doc. 15.) In his supplement to the amended petition, Fowler raises a second "Ground One." (Doc. 16.) For ease of reference, the Court refers to this ground as Ground Eight.

[that] impeded the effort to raise the claim properly in the state court." *Wright*, 169 F.3d at 703. Fowler has not established a basis upon which to excuse the procedural default of this claim.

Further, Fowler does not establish a constitutional violation. After the State rested, Fowler told the trial court that he intended to call the victim's father. (Doc. 45-3, Ex. 4, pp. 435-36.) But the victim's father was not present, and neither the State nor Fowler had subpoenaed him. (*Id.*, pp. 473-74.) After asking Fowler why he wanted to call the victim's father, the state trial court determined that Fowler had not identified relevant, admissible testimony that he expected the victim's father would give. (*Id.*, pp. 475-76.) Fowler indicated that he wanted the record to reflect that the victim's father was home the date of the incident, but had no knowledge of it. (*Id.*, pp. 476-77.) As addressed, the state trial court read the jury a stipulation about the victim's father's involvement in this case. (*Id.*, p. 496.) Fowler told the state trial court that there was nothing else to which he needed the victim's father to testify. (*Id.*, p. 480.)

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). The right to a meaningful opportunity to present a complete defense is "subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998).

Fowler does not show that the state trial court violated his constitutional rights regarding his intent to call the victim's father to testify. Fowler does not establish a

Confrontation Clause violation, as he fails to show that any testimonial out-of-court statements of the victim's father were admitted against him. *See United States v. Ignasiask*, 667 F.3d 1217, 1230 (11th Cir. 2012) (stating that to comply with the Confrontation Clause, the prosecution "may not introduce 'testimonial' hearsay against a criminal defendant . . . unless the defendant has an opportunity to cross-examine the declarant, or unless the declarant is unavailable and the defendant had prior opportunity for cross-examination"); *Crawford v. Washington*, 541 U.S. 36, 52 (2004) (describing testimonial statements as those "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial").

Nor does Fowler show any violation of his right to compulsory process. The Sixth Amendment provides that a criminal defendant "shall . . . have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. "But before there can be a violation of the right to compulsory process, a criminal defendant must establish some colorable need for the evidence to be compelled." *United States v. Capers*, 708 F.3d 1286, 1304 (11th Cir. 2013). A defendant must show "that the evidence unavailable at trial could [have] reasonably be[en] taken to put the whole case in such a different light as to undermine confidence in the verdict." *De Lisi v. Crosby*, 402 F.3d 1294, 1303 (11th Cir. 2005).

Fowler has not met this standard. He does not show that the victim's father would have provided testimony that would undermine confidence in the verdict. Fowler agreed that there was no information to which he needed the victim's father to

testify other than what was in the stipulation. (Doc. 45-3, Ex. 4, p. 480.) And the stipulation merely stated that the victim did not tell her father, who was home on the night of the incident, about what happened until a couple of weeks later, and that he called the police. In addition, Fowler does not show a violation of his right to compulsory process when he did not subpoena this witness to appear for trial. *See United States v. Harris*, 443 F.3d 822, 823-24 (11th Cir. 2006) ("Where a party invites error, the Court is precluded from reviewing that error . . . .").

Finally, to the extent Fowler reiterates his argument that the State did not fulfill its obligations in providing him discovery, his claim is not cognizable on federal habeas review, as discussed in Ground Two. Grounds Four-B and Eight do not warrant relief.

**Ground Five**

Fowler argues that the State violated *Brady* by not disclosing that a witness had housing and monetary help from the State. Fowler also again argues that the State did not timely provide discovery. He asserts that if discovery had been properly disclosed, the defense could have investigated the witness's incentives. Fowler repeats the arguments raised in Grounds Two and Four-A. For the same reasons discussed in the Court's analysis of those Grounds, Ground Five does not entitle Fowler to relief.

**Ground Six-A**

Fowler asserts that prior to jury selection, he was denied the right to "present allocution." (Doc. 15, p. 16.) Because Fowler does not allege a federal constitutional challenge to the validity of his conviction, his claim is not cognizable under § 2254. *See Branan*, 861 F.2d at 1508. Even construing the claim as raising a federal question,

24

Fowler did not exhaust such a claim by presenting it on direct appeal. (Doc. 45-3, Exs. 7, 8.) Fowler does not show that an exception applies to excuse the resulting procedural default. *See* Fla. R. App. P. 9.140(b)(3); *Smith*, 256 F.3d at 1138.

Further, Fowler does not establish any constitutional violation. "Allocution is the right of the defendant to make a final plea on his own behalf to the sentencer before the imposition of sentence." *United States v. Prouty*, 303 F.3d 1249, 1251 (11th Cir. 2002). However, "the right to allocution is not constitutional." *United States v. Fleming*, 849 F.2d 568, 569 (11th Cir. 1988). Thus, Fowler cannot demonstrate entitlement to relief under § 2254.

Additionally, Fowler does not allege that he was prevented from speaking at sentencing. Nor does he allege other specific facts in support of his claim. Fowler does not explain how the state trial court allegedly prevented him from presenting statements or information prior to jury selection, or how any such action violated his federal constitutional rights. Thus, as Fowler has not met his burden to show that habeas relief is warranted, Ground Six-A affords him no relief.

**Ground Six-B**

Fowler contends that he was deprived of his right to present a misidentification defense and argue that someone named John was the perpetrator. But as Fowler does not assert a federal constitutional violation, this claim is not cognizable in his § 2254 petition. *See Branan*, 861 F.2d at 1508.

In addition, even if the claim is construed as involving Fowler's federal rights, Fowler fails to show entitlement to relief. This claim appears unexhausted, as Fowler

did not raise it on direct appeal. (Doc. 45-3, Exs. 7, 8.) Fowler does not show that an exception applies to excuse the procedural default. *See* Fla. R. App. P. 9.140(b)(3); *Smith*, 256 F.3d at 1138. Notwithstanding the default, Fowler does not support his claim with arguments or factual allegations showing that the trial court violated his constitutional right to present a defense. This conclusory allegation is insufficient to warrant federal habeas relief. *See Romine*, 253 F.3d at 1357. Ground Six-B affords Fowler no relief.

**Ground Seven-A**

Fowler argues that his "conviction was based on unconstitutionally tainted jury selection when [the] prosecution excluded qualified jurors," and cites *Batson v. Kentucky*, 476 U.S. 79 (1986).[9] (Doc. 15, p. 17.) Respondent correctly contends that the claim is procedurally barred due to Fowler's failure to raise this claim on direct appeal. (Doc. 45-3, Exs. 7, 8.) Fowler cannot return to state court to raise the claim in a second, untimely direct appeal and he does not establish that an exception applies to overcome the resulting procedural default. *See* Fla. R. App. P. 9.140(b)(3); *Smith*, 256 F.3d at 1138.

Notwithstanding the default, Fowler has failed to show entitlement to relief. His claim lacks supporting factual allegations. He does not identify, for instance, which prospective jurors he believes were improperly excluded or at what point of the jury

---

[9] *Batson* holds that a prosecutor's use of a peremptory strike based on a prospective juror's race violates the Equal Protection Clause. 476 U.S. at 89.

selection process this occurred. Fowler's cursory claim does not establish that habeas relief is warranted, as he does not meet his burden to prove the facts necessary to show a constitutional violation. *See Romine*, 253 F.3d at 1357. Fowler is not entitled to relief on Ground Seven-A.

**Ground Seven-B**

Fowler asserts that the trial court erred in not providing a jury instruction on nullification. When Fowler raised this issue in his postconviction motion, the state court denied as procedurally barred. (Doc. 45-4, Ex. 39, pp. 121-22.) In Florida, claims of trial court error must be brought on direct appeal, not in a postconviction motion. *See Bruno v. State*, 807 So.2d 55, 63 (Fla. 2001). Because the state court's decision was based on the application of this independent and adequate rule of state procedure, Fowler's claim is procedurally defaulted. *See Ferguson v. Sec'y, Dep't of Corr.*, 580 F.3d 1183, 1212 (11th Cir. 2009) (stating that a state court's rejection of a petitioner's federal constitutional claim on state procedural grounds precludes federal review if the state procedural ruling rests on an "independent and adequate" state law ground). Fowler does not show that an exception applies to excuse the default. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

Alternatively, Fowler's claim fails on the merits. He has not shown the state trial court erred by not instructing the jury on nullification. *See United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) ("[T]he jury enjoys no right to nullify criminal laws, and the defendant enjoys a right to neither a nullification instruction nor a nullification argument to the jury . . . ."); *United States v. Hall*, 188 F. App'x 922, 925

(11th Cir. 2006) ("[A] criminal defendant is not entitled to either an instruction or an argument for jury nullification."). Fowler does not show entitlement to relief on Ground Seven-B.

It is therefore **ORDERED** that Fowler's amended petition for writ of habeas corpus (Docs. 15, 16) is **DENIED**. The **CLERK** is directed to enter judgment against Fowler and to **CLOSE** this case.

It is further **ORDERED** that Fowler is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). The district court or the circuit court of appeals must issue a certificate of appealability. *Id*. To obtain a certificate of appealability, Fowler must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Fowler has not made the requisite showing. Since Fowler is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on March 4, 2024.

Charlene Edwards Honeywell
United States District Judge

28